**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **DUBLIN EYE ASSOCIATES, P.C., DR. ROGER D. SMITH, FORMER TRUSTEE OF THE DUBLIN EYE ASSOCIATES' PENSION PLAN AND DR. JAMES Y. JONES, TRUSTEE OF THE DUBLIN EYE ASSOCIATES' PENSION PLAN,** | **Civil Action No. 11-CV-00128-JBC** |
| **Plaintiffs,** | |
| **V.** | **SECOND VERIFIED AMENDED COMPLAINT**_____ |
| **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, THOMAS ACKERMAN, CATHERINE CHATFIELD, QUALIFIED PLAN SERVICES, INC. (n/k/a BENEFITS PLUS), and KIMBERLY SHEA** | |
| **Defendants.** | |

The Plaintiffs, Dublin Eye Associates, P.C., a Georgia Professional Corporation, Dr.

James Y. Jones ("Dr. Jones"), Trustee of the Dublin Eye Associates' Pension Plan (the "Plan")

and Dr. Roger D. Smith ("Dr. Smith"), former Trustee of the DEA Plan (collectively, "DEA"),

through counsel, for their Verified Amended Complaint herein against the Defendants,

Massachusetts Mutual Life Insurance Company ("Mass Mutual"), Thomas Ackerman

("Ackerman"), Catherine Chatfield ("Chatfield"), Qualified Plan Services, Inc. ("QPS"), and

Kimberly Shea ("Shea"), respectfully state as follows:

## PARTIES, JURISDICTION AND VENUE

### A.   The Parties.

1.      The Plaintiff Dublin Eye Associates, P.C. is a Georgia Professional Corporation with its principal place of business in Dublin, Georgia.  DEA owns and administers the Plan, and therefore has standing to bring these allegations on behalf of current and former Plan Participants.

2.      The Plaintiff Dr. Roger D. Smith was, from 1980 through 1999, the Trustee of the Dublin Eye Associates' Pension Plan, an ERISA-qualified pension and retirement plan, whose business address is in Dublin, Georgia.  As former Trustee of the Plan, Dr. Smith also has standing to bring these allegations on behalf of current and former Plan Participants.

3.      The Plaintiff, Dr. James Y. Jones, is the current Trustee of the Dublin Eye Associates' Pension Plan, an ERISA-qualified pension and retirement plan, whose business address is in Dublin, Georgia.  As Trustee of the Plan, Dr. Jones also has standing to bring these allegations on behalf of current and former Plan Participants.

4.      The Defendant Massachusetts Mutual Life Insurance Company is a foreign insurance company authorized to do business in Kentucky, with its principal place of business at 1295 State Street, Springfield, Massachusetts 01111.  Mass Mutual has branches throughout Kentucky, including offices in Lexington, Kentucky at 2365 Harrodsburg Road.

5.      The Defendant Qualified Plan Services, Inc., n/k/a Benefits Plus, is a Kentucky for-profit corporation with a principal place of business at 2365 Harrodsburg Rd., Suite A-220, Lexington, Kentucky 40504.

6.      Catherine Chatfield was, during the period of January 1, 1980, through December 31, 2007, (hereinafter referred to as the "Relevant Time Period"), an authorized agent of Massachusetts Mutual Life Insurance Company and Qualified Plan Services, Inc., who, upon

information and belief, resides in Lexington, Kentucky, and can be found at 2365 Harrodsburg

Rd., Suite A-220, Lexington, Kentucky 40504.

7.	The Defendant Kimberly Shea was, during the Relevant Time Period, an

authorized agent of Massachusetts Mutual Life Insurance Company, who, upon information and

belief, resides in Lexington, Kentucky, and can be found at 301 E. Main St., Suite 1100,

Lexington, Kentucky 40507.

8.	The Defendant Thomas Ackerman was, during the Relevant Time Period, an

authorized agent of Massachusetts Mutual Life Insurance Company who, upon information and

belief, resides at 2047 Manor Drive, Lexington, Kentucky 40502.

**B.	Jurisdiction And Venue.**

9.	This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1332 in that the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and

the matter and action is between citizens of different states.

10.	This Court has subject matter jurisdiction over this action because the benefits at

issue are governed by the Employee Retirements Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001, *et seq.*

11.	Venue is appropriate in this Judicial Division because DEA's claims against the

Defendants arise out of acts or omissions by Defendants in Fayette County, Kentucky.

Additionally, Defendants have offices and primary places of business in Lexington, Fayette

County, Kentucky and many if not all of the policies and contracts at issue were executed by

Ackerman or by those acting on his behalf in Fayette County, Kentucky.

12.	Venue is also proper in this Division because Defendants have offices and/or

places of business in Fayette County, Kentucky and because most of the actions of Defendants,

for which Defendants are jointly and severally liable, were at least partially conducted in Fayette County, Kentucky.

<strong><u>FACTUAL ALLEGATIONS</u></strong>

13.     Starting in or around at least 1980, DEA formed the Plan for the purpose of providing employees with a benefit of employment that would increase in value over time.

14.     The Plan was funded in part by contributions from DEA and in part by employee contributions.  The Plan was designed and intended to qualify under ERISA, 29 U.S.C. § 1001, *et seq.*, as amended and did so qualify.

15.     DEA entered into a prototype Plan document with Mass Mutual to govern the administration of the Plan and Plan assets, selected Trustees, and engaged QPS and Chatfield to serve as Third Party Administrators.

16.     Mass Mutual, Ackerman, QPS, and Chatfield were Plan fiduciaries because they each either (i) exercised discretionary authority or discretionary control respecting management of the Plan or disposition of its assets, (ii) rendered investment advice for a fee or other compensation, direct or indirect, with respect to monies or property of the Plan, or had the authority or responsibility to do so, or (iii) had discretionary authority or discretionary responsibility in the administration of the Plan.  In sum, Mass Mutual, Ackerman, QPS, and Chatfield were entrusted with the task of providing financial planning advice to Plan Participants, investing Plan monies, and otherwise administering the Plan.  Specifically, Ackerman was the primary Mass Mutual agent responsible for providing investment advice to Plan Participants and facilitating the investment of Plan assets within the parameters of the Plan documents.  QPS, through Chatfield, its authorized agent, was responsible for the administration of the Plan, including the preparation of year-end reports and various IRS filings.

17.     As fiduciaries of the Plan, Mass Mutual, Chatfield, Ackerman, and QPS had an obligation to discharge their duties solely in the interest of the Plan Participants and for the exclusive purpose of providing benefits to Plan Participants and their beneficiaries.

18.     Further, in directing the investment of Plan assets, the Defendants had an obligation to exercise care, character and prudence.

19.     The Plan documents contemplated that the Plan assets would be invested in a mixture of investments, including mutual funds and life insurance policies.  When the Plan was established, the general consensus was that each Plan Participant would have one or two whole life insurance policies as a part of the Plan investment.

20.      To this end, beginning in or around 1980, various employees of DEA purchased Pension Plan Policies, administered by the Plan, from Mass Mutual through its authorized agent, Ackerman.  Specifically, these employees – current and former – purchased whole life insurance policies.

21.     In or around February 2007, the Plaintiffs for the first time discovered that, unbeknownst to them and to the affected Plan Participants, Mass Mutual, through Ackerman, caused numerous policies to be issued and paid for without the knowledge or consent of DEA or the affected Plan Participants in order to wrongfully further Ackerman's own economic interests by generating additional insurance policy premiums.

22.     Specifically, the Plaintiffs have now learned and have come to believe that Ackerman, acting on behalf of and with the authority of Mass Mutual, created bogus policies that were written in the names of Plan Participants, forged Plan Participants' signatures to the applications for these bogus policies and/or fraudulently misrepresented to the Plan Participants the nature of the documents they were signing, and for several years fraudulently collected premiums from the Plan Participants for these bogus policies.

23.     The Plaintiffs have also now discovered that Ackerman, Chatfield, Shea, and other individuals working with the actual and apparent authority of Mass Mutual, affixed their signatures to these bogus policy applications as witnesses or issuing agents, even though they were not present when the applications were signed.  Indeed, in certain cases bogus policy applications were "witnessed" in Kentucky even though the alleged applicant had never been in Kentucky.

24.     Chatfield, working in an impermissible dual role as Third Party Administrator and Mass Mutual agent, signed several applications for whole life insurance policies, representing that she accepted the applications in person from Plan Participants in Dublin, Georgia.  Chatfield has never visited the DEA offices in Dublin.  Upon information and belief, Chatfield personally benefited from the fraudulent issuance of these policies by sharing in commissions attributable to these policies.

25.     Shea, working as an agent of Mass Mutual, also signed at least one application for whole life insurance, representing that she accepted the application in person from a Plan Participant in Dublin, Georgia.  Shea has never visited the DEA offices in Dublin.  In so doing, Shea knowingly participated in or concealed the Defendants' breach of fiduciary duty, enabled and substantially assisted the Defendants to commit the breach, and/or knew of the breach but failed to take corrective action.

26.     The Plaintiffs have also now discovered that, in violation of the ERISA, the Defendants caused certain of the Plan Participants' pre- and post-dividend plan premiums to violate the acceptable percentages of policy amounts versus total annual contributions.

27.     Whole life insurance policies are one of the most lucrative investments for Mass Mutual agents, relative to the amount of commission received with each sale.  Upon information and belief, Mass Mutual agents Ackerman, Shea, Chatfield and others worked in concert to sell

numerous whole life insurance policies to several Plan Participants fraudulently under false pretenses and through falsification of insurance documents in order to share in the commissions obtained by virtue of the sales. In so doing, each Defendant either breached the fiduciary duty owed to the Plan or aided and abetted and substantially assisted breaches of such duties, because Defendants acted with knowledge that the whole life insurance policies were not the most appropriate investment for Plan assets and in turn, personally benefited from the inappropriate investment of Plan funds.

28.      The DEA Plan year ended each October 31st. In the following calendar year, DEA received an omnibus bill from Mass Mutual for the previous year's premiums. DEA's practice was to write a single check to Mass Mutual in April, which included both the insurance premiums due and DEA's annual contribution. DEA was unaware that, in many years, Ackerman "sold" whole life insurance policies to the Plan in January, February or March, but backdated the policies to the end of the prior Plan year. Ackerman submitted the signed applications to Mass Mutual at the same time Mass Mutual received DEA's yearly check with the recommendation that the premiums for the new policies be taken from the yearly contribution portion of the check, rather than invoiced separately. Ackerman engaged in this conduct to conceal his fraudulent actions, to avoid detection of the numerous whole life issuance policies being issued during this timeframe, and to assist himself, Chatfield, Shea and others in meeting annual Mass Mutual quotas. In addition, by backdating the policies, in some cases up to six months, Ackerman and Mass Mutual were able to bill DEA a full year's premium for a policy that had only been in effect for a portion of the year.

29.      In addition, the Annual Reports prepared by QPS and Chatfield did not list each insurance policy issued in the name of a particular Plan Participant. Rather, these Annual Reports included only the surrender value of each Participant's share in the Plan, making

7

detection of the numerous life insurance policies that had been issued in any given Participant's name impossible.  Neither Chatfield nor QPS ever provided Plaintiffs with any documentation listing the individual insurance policies that had been purchased by the Plan.  In addition, Ackerman never provided Plan Participants with specific reports regarding Plan investments.

30.     Furthermore, Defendants did not provide Plaintiffs with the required insurance paperwork.  With respect to a majority of the whole life insurance policies purchased by the Plan, Plaintiffs did not receive a delivery receipt, copy of the insurance application or a copy of the policy itself which was customary.

31.     Ackerman likewise failed to counsel Plan Participants regarding the implications, risks or benefits of purchasing the life insurance policies at issue and did not provide Plan Participants with annual financial planning reports.

32.     Upon information and belief, the Defendants' failure to provide advice and guidance to Plan Participants or Trustees, the failure to provide required insurance documents and the failure to provide accurate reports clearly reflecting investments were part of a concerted fraudulent plan of action to obfuscate the nature of the investment of Plan assets to the detriment of Plaintiffs and to the benefit of Defendants.

33.     Since discovering the wrongful conduct of the Defendants in 2007, the Plaintiffs demanded on more than one occasion that the Defendants rectify these issues and reimburse the DEA Plan Participants for their damages and losses, but the Defendants have failed and refused to comply with these requests.

34.     As the agent, insurer, or Third Party Administrator of the DEA Plan, the Defendants each owed a duty to DEA, the Plan and to the Plan Participants to deal with them honestly and forthrightly and to protect their best financial interests.  The DEA Plan, by and through its participants, relied on the Defendants' integrity and on their duty to deal with them

8

fairly and in good faith, to provide accurate investment advice and information about the nature of the investments being made, and to otherwise properly and honestly administer the Plan. Instead, the Defendants acted in concert and with fraud and deceit, breaching the fiduciary duties owed to the Plan and Plan Participants and damaging the Plan and Plan Participants.

## COUNT I

### (Violations Of The Employee Retirement Income Security Act Of 1974 ("ERISA")

35.     The Plaintiffs incorporate each and every allegation set forth in the preceding Paragraphs of the Second Verified Amended Complaint as if fully set forth herein.

36.     At all relevant times herein, the Defendants owed a fiduciary duty to DEA, to the DEA Plan and to the DEA Plan Participants by virtue of the special relationship based on trust established between them, and by virtue of the Defendants' roles as insurer and agent, concerning the nature and appropriate level of insurance coverage each DEA Plan Participant should have and the permissible premium percentage levels under ERISA, as well as the manner in which the Plan was administered and Plan assets were generally invested.

37.     The Defendants each breached this fiduciary duty by fraudulently making material misstatements and omissions of fact regarding the policies issued and the premiums collected, and by personally and individually benefiting from these actions.  To the extent that any particular Defendant did not breach his or her own fiduciary duty to the Plan, such Defendant either aided and abetted, substantially assisted, knowingly participated in, enabled or failed to take corrective action with respect to breaches of fiduciary duty owed to the Plan.

38.     Specifically, the Defendants, acting individually and in concert, breached their fiduciary duties and/or participated in such breaches by fraudulently inducing the Plan Participants to apply for and pay for policies of insurance that were never authorized and the benefit of which the DEA Plan Participants have never received, thereby diminishing the value

9

of each Plan Participant's share in the Plan.  The Defendants' fraudulent actions and omissions

included, but were not limited to, forging Plan Participant signatures, falsely witnessing Plan

Participant applications, lying to or concealing from Plan Participants the true extent and nature

of their policies, fraudulently and wrongfully allowing certain Plan premiums to exceed the

allowable percentages under ERISA and fraudulently and deceitfully collecting premiums for

bogus policies.

39.     The Defendants wrongfully received or retained undisclosed profits, payments,

premiums, fees or other forms of compensation in connection with its transactions with the Plan

and its Participants.

40.     As a result of the wrongful retention or receipt of such funds or other things of

value, the Defendants have been unjustly enriched to the detriment of the Plaintiffs.

41.     Further, Defendants Ackerman, Chatfield, and Shea breached their fiduciary

duties and/or engaged in prohibited transactions and dealt with the assets of the Plan for their

own benefit and failed to comply with the requirements of Prohibited Transaction Class

Exemption ("PTE") 84-24, 49 Fed. Reg. 13208 (1984).

42.      PTE 84-24 makes it a prohibited transaction to sell insurance to a plan without

proper disclosure of the amount received in commission, expressed as a percentage of gross

annual payments for the first year and for each of the succeeding renewal years, to be paid to the

agent or broker, as well as disclosure of any relationship that exists between the agent and the

company whose products are recommended.

43.     PTE 84-24 also requires that the agent give this information to the plan fiduciary

prior to the transaction and get prior written approval and acknowledgement from the fiduciary.

44.     Defendants Ackerman, Chatfield, and Shea failed to provide the following

information to the Plaintiffs prior to the execution of the subject transactions:

a.  Sales commissions for the first year and each of the succeeding renewal years that would be paid by Mass Mutual to each agent or broker who received a commission in connection with the purchase of any and all of the policies and/or annuities issued to the Plan and Plan Participants;

b.  A description of the charges, fees, discounts, penalties, or adjustments which may be imposed under the policies and/or annuities in connection with the purchase, holding, exchange, termination, or sale of the subject policies and/or annuities; and,

c.  Accurate information related to all payments pertaining to the policies and/or annuities and all earnings that those products would yield, the risks of loss, and expenses that may affect that yield.

45.     Furthermore, the Defendants failed to require the Plaintiffs to acknowledge in writing the receipt of the above-described information prior to the transactions as required to maintain the Prohibited Transaction Class Exemption.

46.     The Defendants thereby deprived the Plaintiffs of the ability to make realistic informed decisions related to the policies and/or annuities or to consider other legitimate retirement planning vehicles.  Had Plaintiffs been informed of the true state of events and received the required disclosures, Plaintiffs would have elected other retirement vehicles and investment opportunities.

47.     Additionally, Defendant Mass Mutual had actual and/or constructive knowledge and/or knowingly participated in its agents' prohibited transactions.  And, Mass Mutual benefited and profited from these prohibited transactions in the form of premiums, fees, and other charges.

48.     Mass Mutual is therefore, alternatively and additionally, liable as a non-fiduciary party in interest.

49.     Further, Mass Mutual and QPS are also liable for the breaches of duty by their authorized agents, and for the losses caused by them, under the law of agency, including vicarious liability and respondeat superior.

50.     The actions of Defendants, as described in the preceding Paragraphs of this Second Verified Amended Complaint, are in violation of various provisions of ERISA, 29 U.S.C. § 1001, *et seq.*, including but not limited to Section 404(a) of ERISA, 29 U.S.C. §§ 1104; 1105; 1106; 1108; and 1132.

51.     The DEA Plan and its Participants have suffered and are entitled to recover from the Defendants, jointly and severally, compensatory damages proximately caused by the actions and omissions of the Defendants, the exact amount of which will be determined at trial in an amount in excess of the minimum jurisdictional limits of this Court.

52.     The DEA Plan and its Participants have suffered and are entitled to recover from the Defendants, jointly and severally, equitable remedies in the form of restitution and disgorgement of profits proximately caused by the actions and omissions of the Defendants, the exact amount of which will be determined at trial in an amount in excess of the minimum jurisdictional limits of this Court.

53.     The Plaintiffs are likewise entitled to recover attorneys' fees and costs associated with bringing this action and are further entitled to any additional remedies set forth in ERISA, 29 U.S.C. § 1001, *et seq.*

## COUNT II

### (Breach Of Kentucky Insurance Code)

54.     The Plaintiffs incorporate each and every allegation set forth in the preceding

Paragraphs of the Second Verified Amended Complaint as if set forth fully herein.

55.     The Defendants, in connection with the sale of whole life insurance policies to the

Plan, breached various duties existing under the Kentucky Insurance Code, Ky. Rev. Stat. Ann.

§304, *et seq*.  The Defendants each made material misstatements and omissions of fact regarding

the policies issued and the premiums collected, and personally and individually wrongfully and

fraudulently benefited from these actions.

56.     Specifically, the Defendants, acting individually and in concert, fraudulently

induced the Plan Participants to apply for and pay for policies of insurance that were never

authorized and the benefit of which the DEA Plan Participants have never received, thereby

diminishing the value of each Plan Participant's share in the Plan.

57.     The Defendants' fraudulent actions and omissions included, but were not limited

to, forging Plan Participant signatures, falsely witnessing Plan Participant applications, lying to

or concealing from Plan Participants the extent and nature of their policies, failing to deliver the

insurance policies to the Plan Trustees or Participants, fraudulently and wrongfully allowing

certain Plan premiums to exceed the allowable percentages under ERISA and fraudulently

collecting premiums for bogus policies.

58.     The Defendants wrongfully received or retained undisclosed profits, payments,

premiums, fees or other forms of compensation in connection with its transactions with the DEA

Plan and its Participants.

59.     As a result of the wrongful retention or receipt of such funds or other things of

value, the Defendants have been unjustly enriched to the detriment of the Plaintiffs.

60.     The actions of Defendants, as described in the preceding Paragraphs of this Second Verified Amended Complaint, are in violation of various provisions of the Kentucky Insurance Code, Ky. Rev. Stat. Ann. § 304, *et seq.*, including but not limited to §§ 304.14-080; 304.12; 304.14-090; and 304.14-230.

61.     The Plan and its Participants have suffered and are entitled to recover from the Defendants, jointly and severally, compensatory damages proximately caused by the actions and omissions of the Defendants, the exact amount of which will be determined at trial in an amount in excess of the minimum jurisdictional limits of this Court.

62.     The Plaintiffs are likewise entitled to recover attorneys' fees and costs associated with bringing this action, and are further entitled to any additional remedies set forth in the Kentucky Insurance Code, Ky. Rev. Stat. Ann. § 304, *et seq.*

WHEREFORE, the Plaintiffs Dublin Eye Associates, P.C., Dr. Roger D. Smith, Former Trustee of the Dublin Eye Associates' Pension Plan, and Dr. James Y. Jones, Trustee of the Dublin Eye Associates' Pension Plan, respectfully request Judgment on the Complaint herein against the Defendants, Massachusetts Mutual Life Insurance Company, Thomas Ackerman, Qualified Plan Services, Inc., n/k/a Benefits Plus, Catherine Chatfield, and Kimberly Shea, jointly and severally, as follows:

   A.     Judgment on Count I for both compensatory and equitable damages for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as amended, to be determined at trial in excess of the minimum jurisdictional limits of this Court;

   B.     Judgment on Count II for both compensatory and punitive damages for breaches of Kentucky Insurance Code, Ky. Rev. Stat. Ann. § 304, *et seq,* to be determined at trial in excess of the minimum jurisdictional limits of this Court;

14

C.      Both pre-judgment and post-judgment interest on all amounts awarded to the

Plaintiffs herein;

D.      A trial by jury on all Counts of the Complaint so triable;

E.      Their reasonable costs incurred herein;

F.      Reasonable attorneys' fees; and

G.      Such other and further relief to which they are entitled in addition to the costs and

disbursements of this action.

                                        Respectfully submitted,


                                        /s/ Richard A. Getty
                                        RICHARD A. GETTY
                                                and
                                        JESSICA K. CASE

                                        THE GETTY LAW GROUP, PLLC
                                        1900 Lexington Financial Center
                                        250 West Main Street
                                        Lexington, Kentucky 40507
                                        Telephone:  (859) 259-1900
                                        Facsimile:   (859) 259-1909

                                        COUNSEL FOR PLAINTIFFS,
                                        DUBLIN EYE ASSOCIATES, P.C.,
                                        DR. ROGER D. SMITH, FORMER
                                        TRUSTEE OF THE DUBLIN EYE
                                        ASSOCIATES' PENSION PLAN AND
                                        DR. JAMES Y. JONES, TRUSTEE OF
                                        THE DUBLIN EYE ASSOCIATES'
                                        PENSION PLAN

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Second Verified Amended Complaint was served on the 7th day of May, 2012, electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order upon all parties in the electronic filing system in this case.

/s/ Richard A. Getty
COUNSEL FOR PLAINTIFFS

mwepld0046

16

05/04/2012   09:52 Dublin Eye Associates                                    (FAX)4782724350           P.002/002

## VERIFICATION

I, Dr. James Y. Jones, a representative of Dublin Eye Associates, hereby verify that I have reviewed the foregoing Second Amended Complaint and that the allegations set forth therein are true and accurate to the best of my knowledge and belief.

Signed this the 4th day of May, 2012.

James Y. Jones, M.D.

STATE OF GEORGIA      )
                      )
COUNTY OF Laurens     )

Subscribed and sworn to before me by James Y. Jones, M.D., a representative of Dublin Eye Associates, on this the 4th day of May, 2012.

My commission expires: 4/17/2015 .

NOTARY PUBLIC, State at Large

mwepld0045