UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-128-KSF

DUBLIN EYE ASSOCIATES, P.C., et al.                                              PLAINTIFFS

vs.                                **OPINION AND ORDER**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.                                                        DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' motion to reconsider an October 23, 2012 Order [DE 156] granting Defendants' motion to dismiss a claim of fraud in the inducement and prohibiting proof of fraudulent inducement in support of Plaintiffs' claim of breach of fiduciary duty. Also before the Court are Plaintiffs' motion for leave to file a third verified amended complaint and motion to file a combined reply. For the reasons discussed below, Plaintiffs' motion to file a combined reply will be granted, but the motion to reconsider and the motion to file a third verified amended complaint will be denied.

I.      BACKGROUND

In 1980, Dublin Eye Associates, P.C. ("DEA") established a Massachusetts Mutual Life Insurance Company ("Mass Mutual") pension plan after hearing presentations from Tom Ackerman and other Mass Mutual employees and the representatives of a different insurance company. Ackerman is a first cousin and close friend of Plaintiff Dr. Roger Smith. According to Plaintiffs, Ackerman determined all plan investments from 1980 through 1997.[1] DE 212-1 at 5. Thereafter, plan participants had some voice in investment strategies. In 1999, Mark Query joined Ackerman and took the lead in selling mutual funds, stocks and bonds to DEA as plan investments. DEA

---

[1] According to Ackerman, the Trustees made all investment decisions until 1997. DE 212-4 at 4.

terminated Ackerman's services in 2006. DE 212-4 at 3-4. Ackerman claims he "told the Trustees that they would have to choose either Mark Query or Ackerman to work with in the future.... The DEA Pension Plan chose Mr. Query...." DE 212-4 at 12.

In 2007, Plaintiffs learned that each plan participant had multiple whole life insurance policies. Plaintiffs state that when they "made this discovery, they immediately suspected a fraud had been worked upon the Plan, and complained to Mass Mutual." DE 164 at 7. John Milbier of Mass Mutual's Field Investigations Office investigated and concluded that Ackerman's actions had been proper. *Id.* at 7-8.

Plaintiffs initiated this lawsuit on April 13, 2011. DE 1. Plaintiffs' state-law claim of fraud was dismissed as preempted by ERISA on August 31, 2011. DE 28. Plaintiffs moved to file a second verified amended complaint ("second complaint") on May 7, 2012, the deadline for amended complaints. DE 159. The motion was granted June 1, 2012, and the second amended complaint alleged that Ackerman, "acting on behalf of and with the authority of Mass Mutual, created bogus policies," and "forged Plan Participants' signatures to the applications for these bogus policies and/or fraudulently misrepresented to the Plan Participants the nature of the documents they were signing...." DE 67 at ¶ 22. The second complaint continues that documents were improperly signed, and the Defendants "caused certain of the Plan Participants' pre- and post-dividend plan premiums to violate the acceptable percentages of policy amounts versus total annual contributions. ¶¶ 23-26. It claims that the Defendants worked in concert to sell numerous whole life policies to several Plan Participants in order to share in the commissions obtained by virtue of the sales and, in so doing, breached fiduciary duties owed to the Plan. ¶ 27. Ackerman is accused of back-dating policies and presenting an omnibus bill "to avoid detection of the numerous whole life insurance policies being issued during this timeframe...." ¶ 28. Other factual allegations include that Plaintiffs were not provided sufficient documentation and advice regarding plan investments. ¶¶ 29-34. Court I alleges violations of ERISA through beaches of fiduciary duty

and engaging in prohibited transactions. ¶¶ 35-55. Count II alleges breaches of duty under the Kentucky Insurance Code, including falsely witnessing applications, concealing the extent and nature of policies, failing to deliver the policies, allowing plan premiums to exceed allowable percentages, and collecting premiums for bogus policies. ¶¶ 54-60.

Plaintiffs now claim Ackerman told them in 1980 that Mass Mutual pension plans "required" life insurance as a plan investment. DE 164 at 5. They contend they did not know this statement was "false" until mid-May 2012 when Mark Query contacted a career agent for Mass Mutual and was told that there never had been such a requirement. DE 164 at 10, 164-6. Plaintiffs say they gave Defendants notice through a supplemental discovery response on May 23, 2012 that Ackerman had fraudulently induced them to purchase insurance. DE 112-1 at 5. On June 18, 2012, Plaintiffs responded to a motion to compel and stated that the "crux" of their "claims is that Ackerman made repeated material misrepresentations and omissions about their Plan investments" by incorrectly telling them "that life insurance was required to be in their Plan and that by permitting its inclusion they would get a benefit in the form of reduced administrative fees from Mass Mutual." DE 78 at 5. Plaintiffs state they "believed no amendment of the complaint was necessary to use this subsequently discovered fact in support of the claims already asserted in their Second Amended Complaint." DE 163 at 2. *See also* DE 164 at 3 ("they unfortunately concluded amendment was not necessary").

On July 16, 2012, Mass Mutual sought judgment on the pleadings on Plaintiffs' fraudulent inducement claim, arguing "they have not properly alleged a claim for fraudulent inducement against Defendants based on Ackerman's telling them that the Plan required life insurance." DE 94 at 3. Mass Mutual argued that no such claim appeared in the Second Amended Complaint and that fraudulent inducement must be pled with particularity under Fed. R. Civ. P. 9(b). Mass Mutual sought to preclude a fraudulent inducement amendment since the deadline for amending pleadings

3

was long past. DE 94. Mass Mutual further argued they would be prejudiced by the addition of this "entirely new theory of the case" that would require new defenses. *Id.* at 13.

Plaintiffs responded that no tort claim of fraudulent inducement had been asserted, but they should be able to prove existing claims for breach of fiduciary duty with these subsequently discovered facts regarding fraudulent inducement. DE 112. They referenced different specific factual allegations associated with vague claims of fraudulent inducement to argue that these new facts should be admissible, too. *Id.* at 4. Finally, Plaintiffs argued that they learned "during the course of discovery" that their "decision to designate insurance as a permissible Plan investment was based on the Defendant Ackerman's representations to the Plaintiffs that insurance was a requirement for the Plan...." *Id.* at 5.

Mass Mutual replied that, even with a breach of fiduciary duty claim based in fraud, Plaintiffs still needed to satisfy the requirements of Rule 9(b) and that they had failed to do so. DE 133 at 3-4. Moreover, the newly alleged "misrepresentation" by Ackerman had occurred in 1980, and there was no explanation of why this theory could not have been asserted in the two previous complaints. *Id.* at 5. Finally, Plaintiff Smith's testimony was cited to show that nothing produced by the Defendants in discovery revealed that Ackerman's statement was false. *Id.* at 6. Instead, Smith testified that he simply learned this from his attorneys or experts or talking to insurance people. Smith Dep. 867-68, DE 133-1 at 4-5.

Under these circumstances, this Court held that there was no explanation for the failure to present these facts earlier, that injecting a new theory in a case through a discovery response is not permissible, and that Mass Mutual had not received sufficient notice under Rule 9(b). Accordingly, the Court held that Plaintiffs may not seek to prove fraudulent inducement in support of their claim of breach of fiduciary duty. DE 156.

Plaintiffs now ask this Court to reconsider its opinion, arguing that the falsity of Ackerman's statement was discovered in conversations with industry experts after the May 7, 2012 deadline

4

for amending pleadings. DE 163 at 2-3; DE 212-1 at 15. They also claim that it was the absence of a requirement for insurance in the plan documents produced in April 2012 by Mass Mutual that triggered their inquiry. DE 164 at 10, 17. They argue that Mass Mutual "attempted to roadblock the Plaintiffs' efforts in this regard [to obtain discovery] at every turn." *Id.* at n. 6. *See also id.* at 16 ("Defendants have, however, engaged on [sic] a consistent course of conduct intended to prevent Plaintiffs from determining all of the facts at issue."); DE 212-4 at 14 ('the delay in the progress of this litigation has been occasioned by Mass Mutual's recalcitrance to produce relevant documents that have been properly requested by the Plaintiffs"). Accordingly, they argue their delay in raising this issue was excusable. DE 164 at 12-13.

Defendants respond that Plaintiffs have been completely inconsistent in their allegations about life insurance requirements, that the present theory was never pled with specificity, that relevant information was available to Plaintiffs long ago, that nothing produced by Defendants gave rise to the recent theory, and that Defendants would be prejudiced by injecting it into the case at this late stage. DE 187. Defendants particularly note that Plaintiffs faulted Ackerman for allowing "insurance as a **permissible** Plan investment" in their May 15, 2012 response. DE 187-4 at 3. Now, however, they insist Ackerman portrayed life insurance as **obligatory** back in 1980. DE 187 at 4-6. Plaintiffs point to nothing in discovery that changed their memory of Ackerman's 1980 statements. Plaintiffs also do not explain how any documents produced in discovery would have enlightened them regarding what Ackerman said.

Defendants note that both the summary plan description produced by Ackerman on March 19, 2012, and the prototype plan produced by Plaintiffs themselves characterize life insurance as a "permissible," rather than "mandatory" investment in the Plan. *Id.* at 8-9. These documents were available well before the May 7, 2012 deadline. Plaintiffs admit the plan documents refer to insurance as permissible, yet deny that those documents should have caused them to inquire regarding Ackerman's alleged statement to the contrary. DE 212-1 at 15. There also is no

5

explanation as to why they did not discuss Ackerman's alleged statements with Mass Mutual personnel in 2007 when Plaintiffs suspected fraud and asked Mass Mutual to investigate. Defendants suggest that "even the most rudimentary diligence would have alerted them to the absence of any reference to mandatory life insurance in the relevant documents in ample time to amend their pleading in advance of the deadline...." *Id.* at 10.

Plaintiffs' alternative motion to amend their complaint, their proposed Third Verified Amended Complaint, and Defendants' response thereto repeat many of these same arguments. As Plaintiffs state in their motion to file a combined reply, "the [m]otions are, to a large degree, intertwined...." DE 212 at 2.

## II. ANALYSIS

### A. Motion to Reconsider and Amendment for Fraudulent Inducement

Plaintiffs' assertion that they "believed no amendment of the complaint was necessary" strains credulity beyond the breaking point. Any attorney with the extensive litigation experience of Plaintiffs' counsel would be familiar with the requirement of Rule 9(b) to plead fraud with particularity. "To satisfy Rule 9(b), a complaint of fraud, 'at a minimum must "allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."'" *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3D 439, 444 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003).

Nowhere in Plaintiffs' earlier complaints is there any reference to a representation regarding a mandatory requirement of insurance as a plan investment. Paragraphs 13, 16 and 17 of the proposed Third Verified Amended Complaint demonstrate some of the detailed notice to which Defendants were entitled much earlier in this litigation if this argument were to be pursued. DE 165-2 at 4. The vague references to fraudulent inducement in the earlier complaints were linked to different facts, such as forging signatures, falsely witnessing applications, allowing premiums

6

to exceed the allowable percentages under ERISA and the like. *See e.g.*, DE 67 at ¶ 38. The purpose of Rule 9(b)'s particularity requirement "is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). Fair notice was not provided here.

Additionally, Plaintiffs' discovery responses referring to insurance as a "permissible" Plan investment were, at best, misleading. Those responses contradict the present claim that insurance was mandatory. Accordingly, this Court properly held that the pleadings did not give Defendants adequate notice of an ERISA claim for breach of fiduciary duty based on any alleged misrepresentation regarding mandatory insurance or fraudulent inducement.

Moreover, Plaintiffs fail to demonstrate good cause for any modification of the Scheduling Order to allow pursuit of this new theory. Rule 16 authorizes modification of a scheduling order "only for good cause." Fed. R. Civ. P. 16(b)(4). "[G]ood cause is measured by the movant's 'diligence in attempting to meet the case management order's requirements.'" *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting *Inge v. Rock Financial Corp*, 281 F.3d 613, 625 (6th Cir. 2002). Rather than demonstrate diligence in proposing a third amended complaint, Plaintiffs did nothing because they "believed no amendment of the complaint was necessary." DE 163 at 2. Despite Mass Mutual's motion for judgment on the pleadings in July 2012 [DE 94], Plaintiffs took no action until November 7, 2012 when they finally moved to file a Third Verified Amended Complaint [DE 165].

Plaintiffs had the plan documents saying insurance is a permissible investment well before the May 7 deadline to amend pleadings. Nothing Defendants did or did not do precluded Query or Plaintiffs from asking someone at Mass Mutual long ago whether insurance was mandatory. Carelessness "is not compatible with a finding of diligence and offers no reason for a grant of relief." *Shane v. Bunzl Distribution USA, Inc.,* 275 Fed. Appx. 535, 537 (6th Cir. 2008).

7

Additionally, confirming evidence that Mass Mutual did not require insurance, such as Milbier's deposition, certainly was not necessary before notice pleading could be made of the basic fraudulent inducement facts. Reliance on that deposition as the reason for delay is without merit.

Despite the liberality of Rule 15 to allow amended pleadings, Rule 16 "is designed to ensure that 'at some point both the parties and the pleadings will be fixed.'" Fed. R. Civ. P. 16, 1983 Advisory Committee's notes. Assuming the truth of Plaintiffs' claim that they did not learn that Ackerman's statement was false until mid-May, there still is no evidence of reasonable diligence or something that precluded them from making that determination earlier. The failure to "discover" the falsity of the statement resulted from their own lack of effort, rather than any evidence produced or withheld by Mass Mutual. Plaintiffs have failed to demonstrate that, despite their diligence, they could not have reasonably met the May 7, 2012 deadline to amend pleadings.

Prejudice is also a factor the Court may consider under Rule 16. *Leary*, 349 F.3d at 906. Defendants have demonstrated that prejudice would result from allowing the amendment. DE 187 at 11.

### B. Amendment Regarding Annuities

Much of the foregoing analysis applies equally to Plaintiffs' motion to amend their complaint to allege improper diversion of DEA Plan assets into a Defined Benefit Plan and that the annuities were inappropriate and unauthorized investments. DE 165-2 at ¶¶ 26-32, 46. Plaintiffs seek this belated amendment on the ground that they "did not discover the existence of the Defined Benefit Plan or the annuities that had been issued ... until on or about March, 2012...." *Id.* at 46. They suggest that discovery disputes and delays precluded them from meeting the case management deadline for this amendment.

The record demonstrates otherwise. Dr. Jones testified "[w]e were absolutely for the defined benefit plan...." DE 188-8 at 114. Dr. Smith testified that the defined benefit plan was in effect from the beginning and was phased out shortly before his retirement when it reached its

maximum contribution level. DE 188-2, Vol. I at 67-68. Dr. Jones produced a 1995 annual report from his records that specifically mentioned the Defined Benefit Plan. DE 188-17. Both Dr. Smith and Dr. Jones testified that they knew of the termination of the Defined Benefit Plan at the time it occurred in 1998, and they recalled conversations with Ackerman regarding the termination. DE 188-2 at 67; DE 188-8 at 121-22. The record further reflects that DEA received annual invoices listing the annuities purchased by the Defined Benefit Plan. DE 188-9; see also DE 188-18. Dr. Smith executed surrender documents when the annuities were cashed in. DE 188-7.

Even if Plaintiffs had their heads in the sand and were not aware of the annuities earlier, Defendant Ackerman put the Plaintiffs on notice on March 19, 2012 that he sold them annuities. DE 188-13 at 8; see also DE 188-14 and 188-15. There was ample time to amend the complaint to add allegations about annuities before the case management deadline of May 7, 2012. Plaintiffs have failed to demonstrate diligence in meeting the case management order's requirements. *Leary*, 349 F.3d at 906. Accordingly, they cannot demonstrate good cause under Rule 16.

III. **CONCLUSION**

**IT IS ORDERED** that:

A. Plaintiffs' motion to file a combined reply brief [DE 212] is **GRANTED**;

B. Plaintiffs' motion for reconsideration [DE 163] is **DENIED**.

C. Plaintiffs' motion to amend the scheduling order and to file a third verified amended complaint [DE 165] is **DENIED**.

D. Plaintiffs' motion to extend fact discovery and expert witness deadlines [DE 214] remains, pending further orders of the Court

This February 8, 2013.



Signed By:

*Karl S. Forester* KSF

**United States Senior Judge**

9