UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-128-KSF

DUBLIN EYE ASSOCIATES, P.C., et al.                                        PLAINTIFFS

vs.                              **OPINION AND ORDER**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.                                                  DEFENDANTS

* * * * * * * *

This matter is before the Court on the objections of Plaintiffs ("DEA") to Orders by Magistrate Judge Edward B. Atkins entered January 11, 2013 and January 22, 2013 requiring production of various emails to and from Mark Query. For the reasons discussed below, the objections will be overruled.

**I.    BACKGROUND**[1]

Plaintiffs object to two rulings by Magistrate Judge Atkins that compel discovery relating to Mark Query, a broker and investment advisor licensed through LPL Financial, LLC ("LPL"), who advised Dublin Eye Associates ("DEA") regarding pension plan investments. The first objection states it is to that portion of the January 11, 2013 Order that holds the emails before June 1, 2012, between Query and Getty on LPL's email account must be produced. DE 244-1 at 6. Plaintiffs argue this Order is clearly erroneous and contrary to law because "the Magistrate Judge apparently did not consider ... documentation establishing Query's role as DEA's agent." DE 244-1 at 6. They further argue the Magistrate Judge clearly erred by holding that emails from the LPL account before Query was purportedly retained by Getty on June 1, 2012, were not protected by the attorney-client privilege or work product protection. *Id.*

---

[1] This Court previously described the relationships among the parties and non-parties and their claims in this litigation and will not repeat that background here. DE 259.

The second objection is to the January 22, 2012 Order that compels production of all emails prior to June 1, 2012 between Query's personal email account and Getty. DE 246-1 at 5. Plaintiffs and Query object because the Magistrate Judge "failed to incorporate, by reference or otherwise, the analysis or findings contained in any of his prior Orders concerning the parties' discovery disputes" and that the instant order "failed to conduct any analysis or address the substance of the parties' arguments." DE 246-1 at 2. They also complain that the court disregarded Mass Mutual's failure to comply with Fed. R. Civ. P. 37(a)(1). *Id.* at 8-10. Plaintiffs then reiterate the same arguments from their first objection regarding agency and privilege.

The procedural background for these issues is necessary to place the objections in proper context. Reproduced below, almost verbatim, is the factual history from Magistrate Judge Atkins' January 11, 2013 Order. DE 216 at 5-7.

- 1999 – Query started working as the investment advisor for the Dublin Eye pension plan. [Record No. 173-1, at 2].

- 2007 – Dublin Eye asked Query to investigate transactions which are the basis of claims in the Complaint. [Record No. 173-1, at 2].

- January 15, 2007 – Dublin Eye management sends its employees a letter telling them they can speak with Query about the issues relating to the transactions. [Record No. 204, at 2].

- April 2007 – Dublin Eye asks Query to help with investigation/litigation in an "official capacity." [Record No. 186-2, at 198.5-14, 199.16-200.5].

- May 2008 – Dublin Eye and trustees have a meeting in Atlanta with attorneys about the potential action, which meeting Query attended. [Record No. 186-2, at 210.6-212.15].

- 2010 – Dr. Roger Smith, (a trustee of the Plan and individual Plaintiff), and Query met for first time with counsel Richard Getty. Query and Smith told Getty that Query was present as a friend and financial advisor of Dublin Eye. [Record No. 186-2, at 206.13-209.17].

- April 13, 2011 – Dublin Eye filed a Complaint, initiating the current action. [Record No. 1].

- June 1, 2012 – The consulting agreement sent from Getty to Query is purportedly signed by Query and Getty. The agreement stated it was related to Query's "engagement by *this firm* as a consultant." It further stated that Query was "engaged to provide *this firm advice and information*" in exchange for the donation of a $5,000.00 honorarium in Query's name to a charity of his choice. [Record No. 204-5 (emphasis added)].

- August 7, 2012 – At the deposition of Smith, Getty stated Query was in attendance as a corporate representative of Dublin Eye, with no mention of Query acting as or being a consultant. [Record No. 209-3, at 8.10-9.7].

- August 23, 2012 – Mass Mutual served Query with a Subpoena Duces Tecum, asking for all documents related to his involvement with the Getty firm. Query did not produce any consulting agreement or any documents relating to his retention by Getty as a consultant. [Record Nos. 209-5 & 209, at 10].

- August 27, 2012 – Mass Mutual served LPL Financial LLC (with whom Query is associated) with a Subpoena Duces Tecum, asking for all documents related to its or its agents' involvement with Getty and Dublin Eye. [Record No. 182-1].

- September 19, 2012 – Dr. James Y. Jones, (a trustee of the Plan and individual Plaintiff), in his deposition denied Query has a significant role in the litigation, denied any agreement existed related to Query's role in the litigation whether written or otherwise, and denied that Query is being paid any compensation in relation to the litigation. [Record No. 209-4, at 244.4-248.25].

- September 24, 2012 – Mass Mutual moved to compel LPL's compliance with the subpoena. [Record No. 141].

- October 5, 2012 – Query's discovery deposition was taken under oath. At that deposition, Getty was present both as counsel for Query and for Dublin Eye. Significant portions of his testimony follow.

    - Query claimed he was a corporate representative of Dublin Eye and Getty, to which Getty expressly denied that Query was corporate representative of Getty. [Record No. 186-2, at 200.18-19].

    - Query testified, "[the Plaintiffs] asked if I would help as their friend and their financial advisor to help them sort out what had happened. And that doesn't mean to be their attorney or their expert." [Record No. 186-2, at 197.19-22].

    - Query stated he is not giving legal advice, doesn't work for Dublin Eye in any capacity related to the litigation, and is not an employee of Dublin Eye. He further stated that he was there in an interpretative role and "[n]ot as an industry expert." [Record No. 186-2, at 196.18-23, 204.15-206.12, 208.8-20].

    - Query answered "yes" to the question if, in relation to the litigation, he has "no other title, authority, position, office, no other role other than friend and financial advisor?" [Record No. 186-2, at 206.5-7].

        - Query further stated, "I'm not part of any decisions, *no compensation*, no part of any final say on anything." [Record No. 186-2, at 206.8-11 (emphasis added)].

    - Query testified, "I was asked to attend [the meeting with the Getty] as the friend, financial advisor, help us out with this, *which they're calling now the corporate representative*." [Record No. 186-2, at 207.21-208.5 (emphasis added)].

3

- - ▪ Query answered "correct" to the statement, "So when you walked in for that first meeting with Mr. Getty and Dr. Smith, at that time the *only title or role that you had was friend and financial advisor* . . . ?" [Record No. 186-2, at 207.1-4 (emphasis added)].

  - ○ Query reiterated that he is not an employee or officer, and has no authority to make decisions on behalf of Dublin Eye in relation to this litigation; he is just helping out. [Record No. 186-2, at 208.8-20].

  - ○ Query was asked and described what was discussed at the first meeting between Smith and Getty. No objection was posed based on any privilege. [Record No. 182-3, at 209.2-17].

- October 29, 2012 – Magistrate Judge Atkins ordered LPL to produce the records and emails covered by the terms of Mass Mutual's subpoena. [Record No. 161].

- November 16, 2012 – LPL filed a motion for clarification. [Record No. 168].

- November 21, 2012 – Dublin Eye filed a Motion for protective order and a Response to LPL's motion for clarification, making no mention or assertion of the consulting agreement between Getty and Query nor of any compensation being paid to Query. [Record Nos. 173, 173-1, & 174].

- December 12, 2012 – The Magistrate Judge issued an Order granting LPL's motion for clarification and denying Dublin Eye's motion for protective order, due in large part to the lack of evidence of any formal agreement between Query and Dublin Eye or Getty to provide consulting services and the absence of compensation paid to Query. After the Order was issued, Dublin Eye filed a motion to stay enforcement of the Order, which the Court granted on the following day. [Record Nos. 195, 196, & 198].

- December 17, 2012 – Dublin Eye filed a Reply in support of its Motion for protective order where, for the first time, Dublin Eye and Getty asserted a formal consulting agreement with Query and presented the agreement purportedly signed June 1, 2012, as evidence. [Record Nos. 205 & 205-5]. Dublin Eye also filed, for the first time, affidavits dated December 12, 2012, from Plaintiffs Jones and Smith stating that Query had agreed to act as agent or corporate representative for Dublin Eye prior to the lawsuit. [Record Nos. 205-2, 205-3].

- January 11, 2013 – Magistrate Judge Atkins' Order notes the sharp conflict between the sworn testimony, the documents produced and the new facts presented in the December 17 Reply. It further notes the absence of factual support in the motion for protective order. [Record No. 216 at 8]. It states that "the ethical obligations of the legal profession denounce deceptive and misleading gamesmanship tactics. The record reflects a deceptive course of conduct to conceal a relevant aspect of Query's relation to the litigation, which has caused unnecessary expenditures of the Court's and Defendants' time and resources." *Id.* at 9. The Order goes on to recognize that with "Query's formal retention [on June 1], he became an agent of Getty in relation to the instant litigation." Accordingly, it held that emails after that date were within the scope of the attorney-client privilege and work-product protection. *Id.* at 11.

- January 15, 2013 – With the deadline for fact discovery having been extended several times and now set for January 16, 2013, Magistrate Judge Atkins granted leave for all parties to file expedited motions and responses concerning any discovery disputes. [Record No. 220].

- January 17, 2013 – Mass Mutual moved to compel documents pursuant to their August 2012 subpoenas of Query and LPL. [Record No. 231]. The motion was granted January 22, 2013, and Plaintiffs were "required to produce all requested documents in accordance with the previous orders of the Court." [Record No. 241].

## II.  ANALYSIS

Pursuant to Fed. R. Civ. P. 72(a), a district judge "must consider timely objections and modify or set aside any part of the [magistrate judge's nondispositive] order that is clearly erroneous or is contrary to law."  *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) ("A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A))." This standard of review is a limited one. *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993).

> Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence.  Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge.  Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.

*Brownlow v. General Motors Corp.*, No. 3:05CV414, 2007 WL 2712925 at *3 (W.D. Ky. Sept. 13, 2007), citing *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

### A.  Plaintiffs' Procedural Arguments Are Without Merit

Plaintiffs complain that the January 22, 2013 Order omitted essential findings and analysis and that Mass Mutual did not comply with the requirements of Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1.  Neither argument has merit.  First, Plaintiffs fail to cite any authority that omitting findings and analysis is "clear error."  Instead, the authority they cite from other jurisdictions

suggests only that a district judge could "discount it to some degree." DE 246-1 at 7; *see Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc.*, 884 F.2d 1510, 1517, n. 5 (1st Cir. 1989). Moreover, the January 22 Order expressly references "the previous orders of the Court." DE 241.

Plaintiffs argue that the prior orders were not incorporated by reference. DE 246-1 at 7. Again, no authority is cited to support an argument that incorporation is required, much less that it is clearly erroneous to fail to do so. The prior orders dated December 12, 2012, and January 11, 2013, discuss in detail why Query's communications are not entitled to protection from disclosure. Thus, there is no basis for even the relaxed standard of review as suggested in *Quaker State* where the court "offered no hint" regarding the basis for its decision.

Plaintiffs' argument about failure to consult before filing a motion with the Magistrate Judge is equally without merit. When the Magistrate Judge entered his order authorizing expedited motions and responses on any remaining discovery disputes, only one day remained to complete fact discovery. DE 185, 220. The case was nearly two years old, and the discovery deadlines had been extended several times. Moreover, the parties had repeatedly required intervention by the court to resolve discovery matters. It was past time for all discovery disputes to come to an end. The record demonstrates that LPL and Query were not going to produce Query's emails. *See Neighbors Law firm, P.C. v. Highland Capital Management, L.P.*, No. 5:09-CV-352-F, 2011 WL 761480 at *4 (E.D. N.C. Feb. 24, 2011) ("Even when faced with substantially less effort to resolve a discovery dispute, courts have seen fit to proceed to determination of the dispute on the merits."). For Plaintiffs to complain about the procedural posture of a motion that was expressly authorized by the court is simply a waste of time and does not deserve further discussion.

### B. Whether Emails Between Query and Getty Are Relevant and Fall Within the Scope of the LPL Subpoena.

Plaintiffs contend the January 11, 2013 Order is clearly erroneous because the emails sent from Query's LPL email account are not relevant and do not fall within the scope of the subpoena to LPL. It is noteworthy that Plaintiffs' relevancy claim is limited to the LPL subpoena and excludes

the Query subpoena. The two subpoenas are virtually the same. If emails under one are relevant, they are also under the other. The emails also contain information directly related to the claims and defenses in this litigation and, accordingly, are relevant. Fed. R. Civ. P. 26(b)(1). Finally, Magistrate Judge Atkins noted that Query is a fact witness in the litigation, and the emails are relevant at least as a means to impeach that testimony. DE 216 at 10. Plaintiffs have failed to show that the court's order is clearly erroneous or contrary to law.

LPL filed belated objections to the LPL subpoena after being ordered to comply, and these objections were basically rejected by the court's October 29, 2012 Order, which limited the time frame for which emails and documents should be produced. DE 161. Notably, no objections to relevancy were raised prior to Plaintiffs' December 17 Reply in support of the motion for protective order.

Finally, Plaintiffs argue that emails sent by Query from his LPL account are beyond the scope of the subpoena because he was acting outside of his capacity as an LPL broker at the time he sent them. As Magistrate Judge Atkins noted, the fact they were sent to and from Query's @lpl.com email address is sufficient to qualify them as sent by an agent, representative, or person purporting to act on behalf of LPL Financial. DE 195 at 4-5. Accordingly, their production is required. The fact that Query seeks to insulate his employer from liability for his conduct in this litigation does not lessen the scope of the subpoena, nor does it change the fact that the emails were sent from an LPL email account. Moreover, even if a court were to hold that these emails fell outside the scope of the LPL subpoena, they certainly fell within the scope of the Query subpoena and should be produced in response to it.

    **C.**    **Whether the Magistrate Judge's Decision Regarding Attorney-Client Privilege or Work Product Protection for Query's Emails Was Clearly Erroneous or Contrary to Law**

The primary thrust of Plaintiffs' and Query's objections is that email communications between Query and the Getty firm are protected by the attorney-client privilege and/or attorney-work-product

7

doctrine. While Plaintiffs claim that Query was DEA's agent and a litigation consultant to Getty and, thereby, entitled to the privilege, the evidence was to the contrary before Getty's December 17, 2012 Reply. DE 205. In his October 5, 2012 deposition, Mr. Query testified he was acting as the trustees "friend and their financial advisor to help them sort out what had happened. And that doesn't mean be their attorney or their expert. It means talk to people that need to have conversations, look at documents, try to help them make sense of it." DE 186-2 at 197.4-25. Query said he does not work for DEA in any capacity related to the litigation and is not an employee; he has "no other title, authority, position, office, no other role other than friend and financial advisor." He is "not part of any decisions, no compensation, no part of any final say on anything." DE 186-2 at 204.51-206.12. When Query first met with Getty and Smith, his "only title or role" was "friend and financial advisor." DE 186-2 at 207.21-24. He "was asked to attend that meeting as the friend, financial advisor, help us out with this, which they're calling now the corporate representative." *Id.* at 207.1-4. Query reiterated that he was not an employee or officer of the company and had no authority with the DEA pension plan. He was "just somebody they wanted to have, quote, help out?" *Id.* at 208.8-20. No objection was made based on any privilege while Query was asked and answered questions regarding what was discussed at the first meeting between Smith and Getty. DE 182-3 at 209.2-17. Query did not even provide a privilege log until after the January 22, 2013 Order granting Mass Mutual's motion to compel. DE 258 at 6.

On September 19, 2012, Dr. Jones testified that there was no "agreement with Mr. Query about compensating him for the sizeable amount of time he's devoting to this case." "Q. No agreement at all? A. Written or otherwise." "[H]e's just a good guy...." DE 209-4 at 248.1-25.

On December 12, 2012, Magistrate Judge Atkins denied Plaintiffs' motion for a protective order regarding email communications on the grounds that Query testified that he was merely assisting as a friend and financial advisor, Query did not have a common interest with Plaintiffs in the litigation, there was insufficient evidence that Query was an agent or representative of DEA or

8

Getty, Query had not been retained or employed by DEA or Getty, and there was no formal agreement between DEA and Query to act as a consultant in the litigation. DE 195 at 5-10. Getty said he took "a cue from the Magistrate Judge's premature Order" [DE 216 at 11].

On December 17, 2012, Getty filed the Reply attaching a June 1, 2012 consulting agreement between Getty and Query and affidavits dated December 12, 2012 (the same date as Magistrate Judge Atkins' Order) from Dr. James Y. Jones and Dr. Roger D. Smith stating that they "asked Mark to act as the agent or corporate representative for DEA, and he agreed" prior to the lawsuit and that they further expected at all times that "Mark's communications with our attorneys would be confidential and privileged." DE 205-2, 205-3, 205-5. Plaintiffs complain that the Magistrate Judge "ignored this evidence and never referenced or addressed the Affidavits in any way." DE 244-1 at 14.

The party asserting the privilege protection bears the burden of establishing its applicability. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983). For attorney-client privilege or work-product protection to extend to an agent, the interest of the entity and that of its agent must be closely aligned. *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998). "A detailed factual showing is necessary to establish the relationship between the client and a third party that is sought to be included within the protection of the attorney-client privilege."). *Energy Capital Corp v. United States*, 45 Fed. Cl. 481, 492 (2000) (reversed in part on other grounds).

The affidavits of Smith and Jones contain only bare, conclusory statements, rather than any of the necessary factual detail to demonstrate that Query was a representative of DEA. As noted above, Query's testimony was that he did not work for DEA in any capacity related to the litigation. He was not part of any decisions and had no part of any final say on anything. He reiterated that he was not an employee or officer and had no authority to make decisions on behalf of Dublin Eye in relation to this litigation. He was merely a friend and financial advisor with no real stake in the litigation. Dr. Jones denied that Query had a significant role in the litigation. The evidence that

9

Query was not an agent of DEA for purposes of attorney-client privilege is far too strong to be overcome by the bare, conclusory affidavits of Plaintiffs.

Plaintiffs' reliance on *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994) is misplaced. In *Bieter*, the affidavits detailed how the third party had been involved on a daily basis with the unsuccessful development underlying the litigation and had been Bieter's sole representative at meetings with potential tenants and local officials. He was specifically retained in writing and paid by Bieter to provide advice and guidance. The court concluded "[t]here is no principled basis to distinguish Klohs's role from that of an employee." *Id.* at 938. In the present case, Query is not being compensated for his time other than a charitable contribution in his name, is not an employee, and has no authority to act for DEA. *See also Blanco Do Brasil v. 275 Washington Street Corp.*, No. 09-11343-NMG, 2012 WL 12247756 at *7-8 (D. Mass. April 12, 2012) (holding there was no attorney-client privilege because "Ms Ou's relationship to the Trust was equivalent to that of a third-party real estate broker rather than that of an employee" and there was no derivative privilege because "Ms Ou was a source of information for Attorney Hammer, but she was not necessary to help Attorney Hammer or the Trust understand each other."); *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447 at *8 D. Md. Dec. 9, 2010) ("It is noteworthy that the cases extending the privilege to third parties who are not employees of the client suggest that the third party should be paid and retained by the client, or at least be party to a more formal agreement to represent the party when speaking with the attorney for the privilege to apply.").

Moreover, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." "If such a statement had been made, she was required to bring it out at the deposition and could not contradict her deposition testimony in a subsequent affidavit." *Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir. 1986). While *Reid* involved a party opposing summary judgment in whose favor all inferences should be drawn, the present situation appears equally or more

10

applicable since Plaintiffs had the burden of proof and any inferences would be construed against them. A party should not be able to create a factual issue regarding privilege by filing an affidavit that conflicts with earlier deposition testimony.

Similarly, the cited testimony by Query under direct examination by Getty on January 14, 2013, after the January 11 ruling by Magistrate Judge Atkins, is entitled to little weight. DE 244 at 16. No doubt, this testimony was planned in an attempt to discredit the Magistrate Judge's Order.

The evidence shows that, outside of his role as financial advisor, Query had no other formal relationship with DEA or the Getty Law Group before he entered into a consulting agreement with the Getty firm on June 1, 2012. Magistrate Judge Atkins' December 12, 2012 and January 11, 2013 Orders were not clearly erroneous nor contrary to law when they held that "Dublin Eye has not met its burden of a detailed factual showing required to extend protection to Query as a third party." DE 195 at 7-9; DE 216 at 11, n. 1.

With respect to the consulting agreement, Magistrate Judge Atkins held that Query became an agent of Getty in relation to the instant litigation after being formally retained on June 1, 2012. DE 216 at 11. That determination appears generous in light of Dr. Jones' September 19 denial of any agreement with Query, written or otherwise, and Getty's denial on October 5, 2012 of Query's assertion that he was a corporate representative of the Getty Law Group. DE 209-4 at 244.4-248.25; DE 186-2 at 200.10-19. Moreover, Query testified regarding what was discussed at the meeting between Smith and Getty in 2010 without any objection based on privilege. DE 182-3 at 209.2-17. The fact that a written consulting agreement was entered into on June 1, 2012, strongly implies that there was no consultation agreement prior to that time. Additionally, Query himself emphasized that his role in the litigation was limited to that of friend and financial advisor. DE 258-7 at 197, 205-208. He also said he was not involved with providing legal advice. *Id.* at 203-4.

Communications with a litigation consultant or other third party are only protected from disclosure by the attorney-client privilege if the consultant is "necessary" to facilitate the communication between client and counsel and for the rendering of legal advice.

> The involvement of the third party must be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications. Mere convenience is not sufficient.
>
> ... The issue is whether the third party's presence materially facilitates and improves the attorney-client communication process, or whether it is a mere convenience. If the former, the third party's presence should not vitiate the availability of the privilege. If the latter, the privilege will be deemed breached by the presence of the unnecessary third party.

*Flo Pac*, 2010 WL 5125447 at *8, quoting Edna Sela Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* at 264 (5th ed. 2007). "One of the circumstances by which it is commonly apparent that the communication is not confidential is the presence of a third person who is not *the agent of either client or attorney.*" 8 Wigmore, Evidence § 2311 (emphasis added). "What is vital to [extending the privilege to a litigation consultant] is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice, but only accounting service, ... or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d. Cir. 1961).

The record shows that Query's role in this litigation is unlike that of an interpreter or accountant, which have been considered indispensable on occasion. Query admits he is not an expert on retirement plans or insurance. DE 258-7 at 29, 32. Accordingly, he could not be offering advice that would be essential to Getty's representation of the Plaintiffs. His knowledge as a financial advisor has no doubt been helpful, but there is no showing that he was necessary to facilitate communication between DEA and Getty.

Although "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)," there is no protection for

12

communications to or from a third party fact witness. *See* Fed. R. Civ. P. 26(b). Materials prepared by or for an attorney's agents or consultants are encompassed within work product protection, but the record shows that Query did not assume that status until June 1, 2012. He may have been providing informal assistance to DEA in the litigation prior to that time, but he did not have a formal relationship with DEA or Getty at least until June 1, 2012.

The January 11, 2013 and January 22, 2013 Orders correctly determined that any communications prior to that time were not protected by the attorney-client privilege or attorney-work-product doctrine. Plaintiffs have failed to demonstrate that the orders are clearly erroneous or contrary to law.

## II. CONCLUSION

**IT IS ORDERED THAT** Plaintiffs' objections [DE 244] to Magistrate Judge Atkins' Order entered January 11, 2013 and objections [DE 246] to the January 22, 2013 Order are **OVERRULED**. The requested documents shall be produced no later than **March 7, 2013**. Plaintiffs' motion for a status conference [DE 261] regarding the objections is **DENIED AS MOOT**.

This February 21, 2013.



**Signed By:**

*Karl S. Forester* KSF

**United States Senior Judge**