UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-128-KSF

DUBLIN EYE ASSOCIATES, P.C., et al.     PLAINTIFFS

vs.     **OPINION AND ORDER**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.     DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiffs' motion for reconsideration of this Court's Opinion and Judgment entered July 12, 2013. For the reasons discussed below, the motion will be denied.

I.     **BACKGROUND**

This Court granted Defendants' motion for summary judgment because Plaintiffs' claims are barred by the statute of limitations. *Dublin Eye Associates, P. C. v Massachusetts Mutual Life Ins. Co.*, ___F. Supp.2d ___, No. 5:11-cv-218-KSF, 2013 WL3725039 (E. D. Ky. July 12, 2013). The extensive factual detail in that decision will not be repeated here.

Plaintiffs seek reconsideration under Rule 59(e) and Rule 60(b)(6), arguing that the Court misapplied the summary judgment standard, ignored claims regarding annuities, and misapplied the law regarding imputed knowledge. DE 354-1 at 3. With respect to the summary judgment standard, Plaintiffs contend that evidence creating a genuine issue of fact was ignored and that doubts were not construed in Plaintiffs' favor. *Id.* at 6,9. Plaintiffs also suggest that the Court improperly weighed the credibility of witnesses. *Id.* at 8.

## II.  ANALYSIS

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In other words, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson,* 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

### B.  Plaintiffs' Motion For Reconsideration

Plaintiffs complain that all inferences were made in favor of the moving party. DE 354-1 at 9. Despite evidence that the three-year statute of limitations applied, the Court utilized the six-year

statute of limitations in its analysis. The Court further assumed there was sufficient evidence of fraud that the limitations period did not begin to run until the Plaintiffs discovered or should have discovered the fraud. *Dublin Eye*, 2013 WL 3725039 at *3. These are very significant inferences in favor of Plaintiffs.

"Discovery" in the context of an ERISA statute of limitations "encompasses both actual and constructive discovery." *J Geils Band Employee Benefit Plan v. Smith Barney Shearson*, 76 F.3d 1245, 1254 (1st. Cir. 1996). "If actual discovery were required, investors could extend the time for filing suit simply by refusing to investigate possible fraud." *New England Health Care Employees Pension Fund v. Ernst & Young*, 336 F.3d 495, 499 (6th Cir. 2003). In *Hughes v. Vanderbilt University*, 215 F.3d 543 (6th Cir. 2000), the court rejected an argument of no knowledge because media reports had not been heard or read and held that the "relevant inquiry in cases such as the one before us, however, is an objective one." *Id.* at 548. "Actual knowledge does not 'require proof that the individual Plaintiffs actually saw or read the documents that disclosed' the allegedly harmful investments." *Brown v. Owens Corning Investment Review Committee*, 622 F.3d 564, 571 (6th Cir. 2010). "[T]he statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action, and ... a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007). Plaintiffs must show they were not on actual or constructive notice of wrongdoing "despite their exercise of diligence." *Brown*, 622 F.3d at 573. "Unsophisticated or not, plaintiffs cannot shroud themselves in ignorance or expect that their unsophistication will thoroughly excuse their lack of diligence or failure ... to even inquire." *J Geils Band*, 76 F.3d at 1260.

The alleged "fraud" on which Plaintiffs rely is that Ackerman sold the Plan multiple whole-life policies and/or annuities for each member. Plaintiffs insist they were told by Ackerman that there would be only one or two policies per person. DE 30, ¶ 19. Plaintiffs argue they presented

3

evidence to create "a question of fact as to whether a defendant's actions prohibited them from learning, through inquiry notice or otherwise, of the defendant's wrongful actions...." DE 354-1 at 10. Plaintiffs contend that they "provided the Court with substantial testimony supportive of their position that they did ask questions, but that they were intentionally mislead [sic] by Ackerman, who controlled the flow of information and engaged in myriad deceptive practices to prevent Plaintiffs from learning the truth regarding the nature of the Plan investments and Ackerman's self-serving and self-dealing conduct." *Id.* at 14. Plaintiffs insist that the "fraud worked upon the Plan," which was the purchase of multiple whole life policies and annuities for the members, was only discovered in 2007 "when Ackerman no longer controlled the flow of information and was therefore no longer able to obscure details from the Trustees." *Id.* at n. 3.

The problem with Plaintiffs' argument is the testimony of Dr. Roger D. Smith who was the Trustee of the Plan from its inception through the sale of the last policy in 1998. Dr. Smith surrendered all of his whole life policies and annuities when he retired in 1999. Smith Depo. at 44, 254-256. At that time he surrendered **nine whole life policies and three annuities**. *Id.* at 256. Dr. Smith admits that he and Dr. Jones, another Trustee, signed each of the twelve surrender requests and that they both knew about Smith's multiple policies in 1999. *Id.* at 258-59. Smith testified he did not question Ackerman at the time because he had no reason to suspect that anyone else had multiple policies. *Id.* at 257-59. Smith told Query that he did not do anything about this discovery of multiple policies and annuities because he did not want to confront Ackerman, and it did not occur to him that other participants might have multiple policies. Query Depo. at 395-97.

Smith's testimony that he was not aware others had multiple policies is refuted by the evidence that he wrote a letter when Cindy Thomas resigned in 1996 and asked that her three whole life policies and one annuity be transferred. He received a letter from Mass Mutual regarding Thomas' four policies. Smith Depo. at 262-66. In 1997 when Becky Soles and Sheila Soles

4

resigned, Smith signed requests to surrender Becky's seven policies and Sheila's three policies. These documents were given to him by Mallory, and Smith signed them. Mallory Depo. 296-301. Thus, the uncontradicted testimony from Plaintiffs shows that Dr. Smith knew in 1999 that he had twelve policies, including three annuities; Becky Soles had seven policies, including an annuity; Cindy Thomas had four policies; and Sheila Soles had three policies. Dr. Jones also admitted that in 1999 he signed Dr. Smith's surrender forms for nine separate life insurance policies. Dr. Jones Depo. at 376. There is no credibility issue here. "A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990).

"Actual knowledge does not 'require proof that the individual Plaintiffs actually saw or read the documents that disclosed' the allegedly harmful investments." *Brown v. Owens Corning Inv. Review Committee*, 622 F.3d 564, 571 (6th Cir. 2010), quoting *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp.2d 416, 419 n. 3 (S.D.N.Y. 2008). "[T]he fraud-or-concealment provision requires plaintiffs to show that, 'despite their exercise of due diligence or care, they were not on notice of [a defendant's] breach of duty.'" *Id.* at 574, quoting *Schaefer v. Arkansas Medical Society*, 853 F.2d 1487, 1492 (8th Cir. 1988). Accordingly, evidence that Plaintiffs failed to read everything they signed does not create a genuine issue of material fact.

Here, the "discovery" that Ackerman sold the Plan multiple life insurance policies for each member and sold annuities to the Plan occurred no later than 1999. Assuming, for the sake of argument, the longest possible statute of limitations of six years after the discovery, Plaintiffs were required to file their claim no later than 2005. Filing a complaint in 2011 was six years too late, and the claims are time barred. The evidence is so one-sided that Defendants must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52.

It is not necessary to address Plaintiffs' other arguments because Smith's knowledge, by itself, is sufficient to place the Plaintiffs on notice and trigger the statute of limitations. Moreover,

5

the invoices sent directly from Mass Mutual to Plaintiffs every year listed the multiple policies by member and Mallory had them in her file. "Plaintiffs' actual knowledge runs from the date that the documents were provided" and cannot be avoided by claiming they did not read the documents. *Brown*, 622 F.3d at 571. ERISA Trustees are required "to exercise a prudent standard of care when administering a plan." *Id.* at 568. When the record cannot support an inference that the Plaintiffs were reasonably diligent, summary judgment is proper. *J. Geils Band*, 76 F.3d at 1260. The Court also considered Plaintiffs' claims regarding the sale of annuities. The Opinion referenced Dr. Smith's knowledge no later than 1999 that he had three annuities and his knowledge that Cindy Thomas had an annuity in 1996. *Dublin Eye*, 2013 WL3725039 at *11. Thus, any annuities claim is also time barred. The Court further discussed the uncontradicted evidence from Plaintiffs that Mallory was not a "ministerial" employee at all. *Id.* at *7-8. The Trustees also testified that her duties included handling the invoices and paying bills for the Plan. Jones Depo. pp. 189-96; Smith Depo. pp. 776-78; Smalley Depo. pp. 84, 217-220, 226. Accordingly, the motion for reconsideration will be denied.

### III.    CONCLUSION

**IT IS ORDERED** that Plaintiffs' motion for reconsideration [DE 354] is **DENIED**.

This February 21, 2014.



**Signed By:**
*Karl S. Forester* K S F
**United States Senior Judge**