UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-128-KSF

DUBLIN EYE ASSOCIATES, P.C., et al.                                             PLAINTIFFS

vs.                         **OPINION AND ORDER**

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY, et al.                                                   DEFENDANTS

\* \* \* \* \* \* \* \*

This matter is before the Court on Defendants' motions for attorneys' fees. For the reasons discussed below, the motions will be granted.

## I. BACKGROUND

This Court granted Defendants' motion for summary judgment because Plaintiffs' claims were barred by the statute of limitations. *Dublin Eye Associates, P. C. v. Massachusetts Mutual Life Ins. Co.*, 957 F. Supp.2d 843 (E. D. Ky. 2013). The extensive factual detail in that decision and in the Order denying reconsideration [DE 367] will not be repeated here, except as necessary to consider the motion for attorneys' fees.

## II. ANALYSIS

### A. Standard for Award of Attorneys' Fees

Under ERISA, courts have discretion to award reasonable attorneys' fees to either party who has "achieved some degree of success on the merits." 29 U.S.C. § § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 255 (2010). The Sixth Circuit has awarded attorneys' fees to defendants in an ERISA case. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006). The Sixth Circuit has also held that "[a] summary judgment on the basis of the defense of the statute of limitations is a judgment on the merits." *Nathan v. Rowan*, 6451 F.2d 1223, 1226 (6th Cir. 1981).

Once a party has established some degree of success on the merits, the request for fees may be evaluated under a five-factor test:

1. the degree of the opposing party's culpability or bad faith;
2. the opposing party's ability to satisfy an award of attorneys' fees;
3. the deterrent effect of an award on other persons under similar circumstances;
4. whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
5. the relative merits of the parties' positions.

*Moore*, 458 F.3d at 445, citing *Secretary of Department of Labor v. King*, 775 F.2d 555, 559 (6th Cir. 1985). "Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section." *Hardt*, 560 U.S. at 254-55. *See also First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005)("These factors are not statutory and therefore not dispositive. Rather, they are simply considerations representing a flexible approach."); *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 528 (6th Cir. 2008) ("No single factor is determinative."). Additionally, the fourth factor is not applicable when fees are being awarded to a defendant. *See Moore*, 458 F.3d at 446 (affirming award of fees after trial court said fourth factor was inapplicable); *Anita Foundations, Inc. v. ILGWU Nat. Retirement Fund*, 902 F.2d 185, 191 (2d Cir. 1990)(the "benefit to others" factor is not applicable where the employer is seeking fees).

B. **Relevant Factual Background**

Dublin Eye Associates ("DEA"), a Georgia ophthalmology practice, established a pension plan ("Plan") in 1980 with the assistance of Tom Ackerman, an employee of Mass Mutual and a cousin and good friend of Dr. Roger D. Smith, who was a Trustee of the Plan from the outset until his retirement in 1998. Dr. Smith and his partner, Dr. James Y. Jones, alleged that Ackerman represented to them that each of the Plan members would have only one or two whole life policies. They alleged that Ackerman instead sold multiple whole-life policies and annuities to each of the members without authorization and without the Trustees' knowledge.

2

They claim Ackerman feathered his own nest at the expense of the Plan and concealed the multiple policies from them.

This Court granted summary judgment in favor of all defendants, holding that the ERISA claims were long ago barred by even the most liberal statute of limitations. The Court further held that the claims under Kentucky's insurance statutes were without merit because the policies were delivered in Georgia where DEA was located, rendering Kentucky law inapplicable.

The last policy was sold to the Plan in 1998, at which time the investments became self-directed by the members. When Dr. Smith retired in 1998, he and Dr. Jones signed requests to surrender Smith's nine whole-life policies and three annuities. In 1997, when Becky Soles and Shelia Soles resigned, Dr. Smith signed requests to surrender seven policies for Becky and three policies for Shelia. In 1996, when Cindy Thomas resigned, Dr. Smith requested that her three whole-life policies and one annuity be transferred. Thus, no later than 1998, the principal Trustees of the Plan had actual knowledge that multiple whole-life and annuity policies had been sold to individual members. Additionally, the office manager received every year Plan premium invoices, which included a list of the multiple policies sold to each member. She produced from her file such invoices dated from 2002 to 2011. Dr. Smith and Dr. Jones also had files with Plan documents that would have revealed the multiple policies if they had only looked at the documents provided to them.

In 1998, Ackerman left Mass Mutual. In 2007, he parted ways with DEA. Smith and Jones contend that only after Ackerman's departure did they first discover the multiple policies, because Ackerman could no longer conceal the information from them. DEA complained to Mass Mutual, and it conducted an investigation into the claims. DEA was advised that there was no concealment and their claims were untimely.

Despite learning of the multiple policies no later than 1998 and being advised any claims were too late in 2007, DEA filed the present action in April 2011. DEA amended their complaint twice to raise new claims and theories, and the Court denied a third amendment alleging fraud. The Defendants raised a statute of limitations defense from the outset and reiterated it at every appropriate opportunity.

The Plan Trustees repeatedly testified that they did not look at documents DEA received, did not read what they signed as Trustees, did not ask for details regarding the $40,000 plus premiums they were paying annually, did not know what their duties as Trustees were, did not make any investment decisions, and did not ask for any assistance in carrying out their fiduciary duties. Smith even admitted he was an ignorant Trustee and Administrator. In fact, he said he did not know that he was the Plan Administrator. Plaintiffs' own investigator, Mark Query, said the information the Trustees needed was readily available; all the Trustees had to do was look. Without question, Plaintiffs failed to exercise reasonable diligence in monitoring the Plan or Ackerman's activity.

Discovery was particularly difficult and expensive for the Defendants because relevant facts and documents were at least ten years and up to thirty years old. DEA deposed fourteen fact witnesses, many of whom were out of town. Defendants deposed only nine fact witnesses. The docket entries in this case number close to four hundred, which speaks volumes about the intensity with which the case was practiced. The Court notes that the Magistrate Judge was asked to intervene in discovery disputes nearly twenty-five times. Only four of those interventions resulted in rulings in favor of Plaintiffs in whole or in part. DE 131, 167, 179, 242. The last attempted intervention resulted in a fine against Plaintiffs' counsel for "unreasonably and vexatiously" multiplying court proceedings. DE 323.

C. **Success on the Merits**

DEA argues strenuously that Defendants have merely a procedural victory and not "some success on the merits." DE 363 at 3-6. In support, DEA relies on comments in Defendants' summary judgment briefs on the issue of limitations. The standard for summary judgment bears no relation to the test for an award of attorney fees. The statutory test for an award of fees does not require that the Defendants be "exonerated of any wrongdoing" as DEA argues. *Id.* at 6. More importantly, courts in the Sixth Circuit have specifically held that summary judgment on limitations is a decision on the merits. *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) ("A summary judgment on the basis of the defense of the statute of limitations is a judgment on the merits."). *See also EB-Bran Productions, Inc. v. Warner*, 242 F. App'x. 311, 312 (6th Cir. 2007) ("Under federal law, summary judgment based on the statute of limitations is a final judgment on the merits for res judicata purposes."). Plaintiffs make no effort to distinguish the law in this circuit.

Even a remand for further consideration has been held to be "some degree of success on the merits" and supported an award of attorneys' fees in the Sixth Circuit. Although *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256 (2010), declined to decide whether a remand order, without more, constitutes the requisite success, it held that a remand to "adequately consider[] all the evidence" was success on the merits and entitled Hardt to attorneys' fees. In *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537 at *9 (6th Cir. 2011), the court held that even if McKay was ultimately ineligible for benefits, "he has still seen success on the merits because his case was remanded for further consideration." Accordingly, an award of fees under ERISA was appropriate. *See also, Thies v. Life Ins. Co. of North America*, 839 F. Supp. 2d 886, 891 (W.D. Ky. 2012)("In the Sixth Circuit, a remand, alone, constitutes 'some success on the merits' that makes an award of attorney's fees and costs available under § 1132(g)(1)."); *Mullins v. Prudential Ins. Co. of America*, No. 3:09cv371, 2012

WL 1067898 at *3 (W.D. Ky. March 29, 2012) (remand constituted some degree of success on the merits for purposes of fee award); *Bio-Medical Applications of Kentucky, Inc. v. Coal Exclusive Co., LLC*, No. 08-80, 2011 WL 3568249 at *2 (E. D. Ky. August 15, 2011) (fee award after remand); *Elliott v. Metropolitan Life Ins. Co.*, No. 04-174, 2007 WL 1558519 at *3 (E.D. Ky. May 29, 2007)(fee award after remand). If a remand for further consideration constitutes some success on the merits for purposes of entitlement to attorney fees, then certainly summary judgment in favor of the defendants and dismissal of the case is more than sufficient.

*Barnes v. AT&T Pension Benefit Plan*, ____ F. Supp.2d ___, No. C-08-4058, 2103 WL 3870291 (N. D. Cal. July 26, 2013), discussed the distinction between a "purely procedural victory" and some success on the merits. "[W]inning a motion for class certification or a motion to intervene would constitute a purely procedural victory because such a success does not bring the victorious party any closer to its desired relief." *Id.* at *6, quoting *Taaffe v. Life Ins. Co.*, 769 F. Supp.2d 530, 540-41 (S.D.N.Y. 2011). In the present case, Defendants fully achieved their desired relief -- the case was dismissed with prejudice and Judgment was entered in their favor. DE 352, 353. Their victory is not purely a procedural one.

### D. Factors for Consideration

Plaintiffs begin their argument against an award of attorneys' fees by relying on a 1981 case out of the Seventh Circuit that says "consideration of these factors will seldom dictate an assessment of attorney's fees against ERISA plaintiffs." *Marquardt v. North American Car Corp.,* 652 F.2d 715, 720 (7th Cir. 1981). While fee awards in favor of defendants may not be frequent, they certainly are available in circumstances such as these. The statutory language chosen by Congress is that "the court in its discretion may allow a reasonable attorney's fee and costs of action to **either** party." 29 U.S.C. § 1131(g)(1), emphasis added. Moreover, that same circuit recently upheld an award of attorney fees to defendants in an ERISA case. *Stark v. PPM America, Inc.,* 354 F.3d 666, 673 (7th Cir. 2004). It noted that the plaintiff was "evasive" and

"his theories kept shifting." *Id.* It concluded that the plaintiff's "pursuit of benefits was not substantially justified so an award of attorney fees was proper." *Id.*

A case bearing a strong similarity in many respects to the present one is *Fish v. GreatBanc Trust Co.*, No. 09 C 1668, 2013 WL 1768692 (N. D. Ill. April 22, 2013). Judgment was entered in favor of the ERISA defendants on the statute of limitations. *Id.* at *1. When considering whether the plaintiff's claims were substantially justified, the court said:

> Defendants presented this Court with substantial evidence of the Individual Plaintiffs' actual knowledge of the facts on which they based their claim, and the dates on which Plaintiffs obtained that knowledge. Tellingly, discovery established that the Individual Plaintiffs learned of **no facts** after March 17, 2006 (three years before the date this case was filed) to give rise to their claims against Defendants; everything the Individual Plaintiffs knew and alleged in their Complaint, they learned before 2006.

*Id.* at *2. The court awarded attorney's fees and expenses to defendant GreatBanc in the approximate amount of $1,257,000 and fees and expenses to the Individual Defendants in excess of $1,730,000. *Fish v. GreatBanc Trust Co.*, 2013 WL 5548578 at *3 (N.D. Ill. October 4, 2013).

The Sixth Circuit affirmed an award of attorneys' fees to Defendants where the "Plaintiff unnecessarily prolonged litigation by filing unreliable briefs and pursuing arguments even after their rejection by the court." *Moore*, 458 F.3d at 445. The Plaintiff's claim for benefits was colorable, but a number of other claims against both Defendants were "near frivolous." Plaintiffs here pursued fraud arguments despite their having been rejected several times. *Dublin Eye*, 957 F. Supp.2d at 845. Plaintiffs also unnecessarily prolonged the litigation as discussed below.

In the present case, there was evidence that the Plaintiffs should have known the facts relating to their claims throughout the operation of the Plan beginning in 1980. They had documents at their fingertips to provide full information about the investments, if they had only looked at them. Without question, Plaintiffs had knowledge no later than 1998 when Dr. Smith

7

retired that the plan members had more than one or two whole-life policies and that they had annuities. In 2007, when they admit having actual knowledge of the facts, they were told their claims lacked merit and were too late. This is not a case of discovery revealing facts the plaintiffs could not have known. It was all in DEA's possession long before the lawsuit was filed. Like *Fish*, DEA's claims were not substantially justified. Plaintiffs' complete lack of diligence in their role as Trustees and their insistence in pursuing untimely claims are not deserving of the protection ERISA affords individual participants pursuing claims in good faith.

1. <u>The Degree of the Opposing Party's Culpability or Bad Faith</u>

DEA's Plan Trustees admitted they were willfully ignorant of their obligations as Trustees and of the Plan investments. According to their own testimony, they did not read documents provided for their files, nor did they read what they signed. They allowed Ackerman to do as he wished with the Plan, without any questions being asked. The Trustees had an obligation and a duty to the Plan participants to see that the transgressions alleged did not occur, much less persist for years. Nine years after the last policy was sold to the Plan, Plaintiffs raised questions about the investments and were told their arguments were without merit and were too late. Nonetheless, they waited four more years and then filed the present action based on facts known to them long ago. Plaintiffs failed to exercise any diligence, much less reasonable diligence, in their role as Trustees.

Culpability requires a lesser showing than bad faith and is sufficient to support a fee award. *See Elliott,* 2007 WL 1558519 at *3. The court in *Hoover v. Armco, Inc.*, 915 F.2d 355, 357 (8th Cir. 1990), held that continuing to pursue a time-barred claim after an undisputed statute of limitations defense was raised constituted acting in bad faith and supported an award of attorneys' fees.

Additionally, the Plaintiffs' case was practiced with so much unnecessary sound and fury that Defendants' attorneys' fees are understandably substantial. One example of a waste of the

Court's and the Defendants' time and resources is detailed in Magistrate Judge Edward B. Atkins' opinion regarding discovery from Mark Query. DE 216; *Dublin* Eye, 2013 WL 653539 (E. D. Ky. January 11, 2013). After being served with subpoenas in August 2012 for emails and other documents relating to involvement of Mark Query with the litigation, Query's deposition was taken. Query testified that he was simply a friend and financial adviser of DEA and had no other title, authority, position or role in the litigation. *Id.* at *4. Dublin Eye moved for a protective order regarding Query documents, but made no mention of any consulting agreement between Query and counsel for Plaintiffs. When Dublin Eye filed its reply on December 17, 2012, it asserted for the first time that there was a formal consulting agreement with Query, which agreement was allegedly dated June 1, 2012. *Id.* at *4-5. As a result, the reply argued that some communications with Query were privileged. The Court noted that the consulting agreement "directly contradicted" Query's statements under oath and that it was never produced in response to the subpoena. Magistrate Judge Atkins found: "The record reflects a deceptive course of conduct to conceal a relevant aspect of Query's relation to the litigation, which has caused unnecessary expenditures of the Court and Defendants' time and resources." *Id.* at *6. Thereafter, Plaintiffs continued their refusal to produce the documents and filed objections which were denied. DE 270.

Not long thereafter, Magistrate Judge Atkins imposed sanctions on Plaintiffs' counsel for attempting in bad faith "to get the Court's intervention in this matter with the improper purpose of manipulating the power of the Court to harass opposing counsel, thereby 'unreasonably and vexatiously' multiplying the proceedings of the Court." DE 323 at 2. This Court also noted in ruling on the summary judgment motion that Plaintiffs argued many issues which were "extraneous and irrelevant" to the question of the timeliness of the claims. DE 352 at 2. As these examples illustrate, there was much wasting of the Court's and the Defendants' time. This factor weighs heavily in favor of an award of attorneys' fees.

## 2. The Opposing Party's Ability to Satisfy an Award of Attorneys' Fees

Plaintiffs concede that "the Court would likely find that they do have the ability to pay an award." DE 363 at 12. This factor also favors an award of attorneys' fees to Defendants.

## 3. The Deterrent Effect of an Award on Other Persons Under Similar Circumstances

An award of attorneys' fees will have a deterrent effect on persons under similar circumstances in several ways. Plan Trustees and Plan Administrators will be deterred from abdicating their obligations as fiduciaries to be aware of Plan activities and to review carefully Plan documents. ERISA "requires plan fiduciaries to exercise a prudent standard of care when administering a plan." *Brown v. Owens Corning Inv. Review Committee*, 622 F.3d 564, 568 (6th Cir. 2010). An award of fees will confirm that ignorance is not bliss for ERISA trustees.

Additionally, Trustees and Administrators will be deterred from pursuing untimely and unviable claims. This is not a case where a plaintiff "pursued a colorable claim but simply lost." DE 363 at 13. Rather, Plaintiffs had in their possession all the information they needed to know their claims were time barred and had actual knowledge of the relevant facts at least as early as 1998. The litigation strategy of bringing untimely claims and seeking to force settlement by abusive litigation tactics should also be deterred. "[F]ee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 532 (6th Cir. 2008)

Plaintiffs' reliance on *King v. Tadco*, No. CV-03-5134, 2005 WL 1311929 (E.D. N.Y. May 26, 2005), and the argument that "plaintiff-trustees, unlike employers or employees, generally would be deterred from vexatious litigation by the absence of personal gain from such suits," [DE 363 at 13], is not well taken. Plaintiffs Smith and Jones were participants in the plan and could achieve personal gain by recouping damages on behalf of the Plan. Moreover, they did not pursue colorable claims and simply lose. Their claims were time barred when filed.

10

Additionally, Plaintiffs stand to lose if other participants hold them responsible for damages suffered on their watch. Accordingly, this factor also favors an award of fees.

        4.        Common Benefit or Significant Legal Questions Regarding ERISA

As noted above, this fourth factor is not applicable when fees are being requested by a defendant. *See Moore*, 458 F.3d at 446 (affirming award of fees after trial court said fourth factor was inapplicable); *Anita Foundations, Inc. v. ILGWU Nat. Retirement Fund*, 902 F.2d 185, 191 (2d Cir. 1990)(the "benefit to others" factor is not applicable where the employer is seeking fees). Accordingly, this factor is neutral.

        5.        The Relative Merits of the Parties' Positions

This factor is intertwined with the first factor of culpability or bad faith. Plaintiffs' claims were time barred when they were filed, and Plaintiffs had all the information they needed to know that. Moreover, Defendants succeeded in getting all claims dismissed. This factor also weighs heavily in favor of an award of fees.

In summary, all factors either support an award of attorneys' fees and costs or are neutral. The Court concludes that Defendants are entitled to an award of fees.

**E.**        **Specific Objections to Fees Requested**

Plaintiffs make a few specific objections to the amount of fees requested. These objections are premature. Pursuant to Rule 54(d), the Court is to first determine whether Defendants are entitled to attorneys' fees under 29 U.S.C. § 1132(g). The Court has now done that. Next, the parties are to submit additional evidence regarding the reasonableness of the amount of fees requested or agree among themselves as to the amount of fees to be recovered.

**III.**        **CONCLUSION**

        **IT IS ORDERED** that Defendants' motions for attorneys' fees [DE 358, 359] are

**GRANTED**. This matter is **REFERRED** to Magistrate Judge Atkins for a report and recommendation on the specific amount of fees to be awarded.

This March 24, 2014.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

for Karl S. Forester, Senior Judge